**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ROGER VAN HECK,

        Plaintiff,

                v.                              Case No. 04-CV-71833-DT

MT. CLEMENS POLICE OFFICERS LEWIS AND
DISSER, et al.,

        Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' "MOTION FOR DISMISSAL
AND/OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT"**

      Pending before the court is Defendants' "Motion for Dismissal and/or in the

Alternative Motion for Summary Judgment." Defendants' motion has been fully briefed and

the court has determined that no hearing is required. E.D. Mich. LR 7.1(e)(2). For the

reasons stated below, the court will grant Defendants' motion.

**I. BACKGROUND**

      On February 26, 2004, Defendants Sgt. James Disser and Officer Joshua Lewis of

the Mt. Clemens Police Department responded to a complaint of domestic violence at 41

Logan Apt. #3 in Mt. Clemens. The complaint was called in by Linda Montgomery,

Plaintiff's girlfriend, who lived at that apartment. (Defs.' Mot. at Exs. 1, 2, and 2a; Pl.'s

Compl. at 2.) Upon their arrival, the Officers interviewed Ms. Montgomery at a neighbor's

apartment, #6. (Defs.' Mot. at Exs. 1, 2, and 2a.) Ms. Montgomery informed the Officers

that Plaintiff had become agitated, punched her in the nose and thrown her purse in her

face as they were driving toward Wilson's Café, a restaurant at which a friend of Plaintiff's

had reportedly been shot earlier that day. (*Id.* at Ex. 2.) During this interview, the Officers

observed that Ms. Montgomery's nose "was swollen and red." (*Id.*) Plaintiff resided at the Logan Street apartment with Montgomery.

The officers then proceeded to Apt. #3 and knocked several times. (*Id.*) After a few minutes, Plaintiff opened the main door, but refused to open the screen door. (*Id.*) While they were standing at the door, the Officers received information via radio that Plaintiff had two outstanding warrants for his arrest, the first being for Unlawful Blood Alcohol Level and the second for Child Neglect. (*Id.*) Sgt. Disser then directed Officer Lewis to open the screen door, which he did. (*Id.*) The Officers arrested Plaintiff, searched his person and found two Florida State Driver's Licenses with Plaintiff's picture but with the name "Delmer Howard." (*Id.*) In addition, the Officers found on Plaintiff's person a credit card and an ATM card, both in the name of "Delmer Howard." (*Id.*) The Officers testified that they also recovered Plaintiff's Michigan State Driver's License located on his person. (*Id.* at Exs. 1, 2.) Plaintiff disputes this, however, asserting that he did not have a Michigan State Driver's License and that the Officers did not properly identify him prior to his arrest. (Pl.'s Resp. at 5.)

Following his arrest, Plaintiff alleges that the Officers escorted him to a patrol car and secured him while they returned to his apartment where they "conducted an unauthorized, and unwarranted search of plaintiff's home and personal papers and belongings." (Pl.'s Compl. at 2.) Plaintiff was subsequently charged with Domestic Violence (Count I), Driver's License-Forged-Possessing 2 or more (Count II), Operating License-Forge/Alter/False ID (Count III). (Defs.' Mot. at Ex. 5.) On April 5, 2005, the

2

Macomb County Circuit court accepted Plaintiff's plea of guilty to Counts I and III, and dismissed Count II.  (Defs.' Mot. at Ex. 6.)

In his May 14, 2004 complaint, Plaintiff alleges a violation of his Fourth Amendment rights, namely for (1) wrongful arrest; (2) illegal entry; and (3) illegal search and seizure. (Pl.'s Compl. at 1.)  On May 17, 2005, Defendants moved for summary judgment on all claims alleging, inter alia, that the Officers, the City of Mt. Clemens, and the city's Police Department are not liable.  (Defs.' Mot. at 7,9.)

## II.  STANDARDS

### A.  Fed. R. Civ. P. 12(b)(6)

In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.  *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *Kline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).  When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor.  *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Wright*, 58 F.3d at 1138; *Columbia Natural Resources, Inc.*, 58 F.3d at 1109.

Though decidedly liberal, this standard of review does require more than the bare assertion of legal conclusions.  *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1100-01 (6th Cir.

3

1995).  The complaint should give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994).  "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" *Lillard*, 76 F.3d at 726 (emphasis in original) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).  "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account."  *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

### B.  Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, and is, therefore, not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); Fed. R. Civ. P. 56(c).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party.  *Dunigan v. Noble*, 390 F.3d 486,492 (6th Cir. 2004) ("we must determine 'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.'")  The court does not weigh the evidence to determine the

4

2:04-cv-71833-RHC-DAS    Doc # 29    Filed 08/03/05    Pg 5 of 14    Pg ID 232

truth of the matter, but must determine if the evidence produced creates a genuine issue

for trial.  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

### III. DISCUSSION

### A. Wrongful Arrest

Plaintiff alleges that the Officers did not have probable cause to arrest him.  In the

context of an arrest, probable cause denotes "facts and circumstances within the officer's

knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in

believing, in the circumstances shown, that the suspect has committed, is committing, or is

about to commit an offense."  *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

M.C.L. 750.81(2), in relevant part, states that

> an individual who assaults or assaults and batters his or her spouse or former
> spouse, an individual with whom he or she has or has had a dating relationship, an
> individual with whom he or she has had a child in common, or a resident or former
> resident of his or her household, is guilty of a misdemeanor punishable by
> imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

M.C.L. 750.81.

A "battery" is the willful touching of person of another by an aggressor. *People v.*

*Bryant*, 264 N.W.2d 13, 16 (Mich. Ct. App. 1978).

In order to justify an arrest for domestic violence under circumstances such as those

presented herein, a reasonable officer must have information leading him to believe that

there has been a battery perpetrated by a person with whom the alleged victim was

residing.  In this case, it is undisputed that Ms. Montgomery made a phone call complaining

of being hit in the face by the Plaintiff, and that the Officers were responding to that

complaint.  (Defs.' Mot. at Ex. 2.)  It is not disputed that Ms. Montgomery's nose was

observed by officers to be swollen and red when she met with them and that she repeated

5

her complaint about the battery to them.  (*Id.*)  It is, finally, undisputed that Montgomery

and Plaintiff were cohabiting at the time, i.e., that the alleged victim was "a resident or

former resident of [Plaintiff's] household."  M.C.L. 750.81(2). These factors established

clear probable cause for a reasonable officer to believe that Plaintiff had committed

"domestic violence."  *DeFillippo*, 443 U.S. at 37.

> M.C.L. 764.15a provides, in relevant part, that:
>
> A peace officer may arrest an individual for violating section 81 or 81a of the
> Michigan penal code . . . regardless of whether the peace officer has a warrant or
> whether the violation was committed in his or her presence if the peace officer has .
> . . reasonable cause to believe both of the following:
>> (a) The violation occurred or is occurring.
>> (b) The individual . . . resides or has resided in the same household as the
>> victim . . . .

M.C.L. 764.15a.

Accordingly, a reasonable officer with the foregoing factual information could

proceed lawfully to take the Plaintiff into custody forthwith without seeking judicial approval.

The Officers proceeded to the apartment that Ms. Montgomery directed them to in order to

find and arrest Plaintiff. Plaintiff refused to let them enter.

Before arresting Plaintiff, the Officers learned by radio of the two arrest warrants

previously issued for Plaintiff, both of which were still outstanding.  Although these warrants

were not the principal rationale for making a custodial arrest, according to the officers, they

legally buttress the decision.

Finally, the Sixth Circuit has held that "the pleas in state court made by [criminal]

defendants and the finding of guilt and imposition of fines, by [the criminal] court estop

plaintiffs from [later] asserting in federal court that the defendant police officers acted

without probable cause."  *Walker v. Schaeffer*, 854 F. 2d 138, 142 (6th Cir. 1988).  On

6

March 2, 2005, Plaintiff entered a plea of guilty before the Circuit Court for the County of Macomb for a count of domestic violence and a count for conspiracy to commit possession of a forged or fraudulent driver's license.  (Defs.' Mot. at Ex. 4, 5.)

Even if the officers lacked probable cause for the arrest, Plaintiff is estopped from asserting in this court that the Officers arrested him without probable cause.  (*Id.*)  For these reasons, Defendants' motion for summary judgment on Plaintiff's claim of wrongful arrest will be granted.

**B.  Illegal Entry**

Plaintiff also asserts that Defendant Police Officers did not have proper consent to enter his apartment and therefore their entry violated the Fourth Amendment.  However, as stated above, the Officers had probable cause to arrest Plaintiff and knowledge of two outstanding arrest warrants for Plaintiff, which permitted the Officers to enter the premises to arrest Plaintiff.  *Payton v. New York*, 445 U.S. 573, 574 (1980). Furthermore, the Fourth Amendment's prohibition against warrantless entry of a person's home "does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over premises."  *Illinois v. Rodriguez,* 497 U.S. 177, 181, (1990) (citations removed).

It is not disputed that Montgomery called the Officers to respond to her domestic violence complaint or that she informed them that Plaintiff was in the apartment she and Plaintiff jointly shared.  In addition, Plaintiff stated in his complaint that he cohabited with Ms. Montgomery.  (Pl.'s Compl. at 2.)  His attorney in the state court criminal proceeding repeated the assertion that they "resided together."  (Defs.' Mot. at Ex. 6 at 4.)

7

A person who "resides together" with Plaintiff possesses equal authority over the premises at least with respect to the ability to permit an entry into the house.      Consent to enter a residence can be provided by a "third party who possesse[s] common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974); *United States v. Moore*, 917 F.2d 215, 223 (6th Cir. 1990).

> "Common authority" is
>
> [M]utual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock,* 415 U.S. at 171 n. 7.

The Sixth Circuit held in *Moore* that a girlfriend of the defendant was justified in authorizing a law enforcement search of the residence because she had common authority over the residence and shared a bedroom with the defendant.  *Moore,* 917 F.2d at 223.  In *United States v. Clutter*, 914 F.2d 775, 778 (6th Cir.1990), the Sixth Circuit held that teenage children had sufficient access and control over their parents' bedroom to authorize a search therein.

There being no dispute upon which a question could be based as to the authority of Montgomery to consent to the officers' entry into the house, the entry was lawful and Defendants' motion for summary judgment on Plaintiff's illegal entry claim will be granted.

### C.  Illegal Search and Seizure

Plaintiff also asserts, in his complaint, that the Officers searched his home without a warrant nor consent.  Plaintiff claims that after the Officers arrested and searched him and

8

escorted him to the patrol car, they then returned inside the house to finish their search. (Pl.'s Compl. at 2.)  Defendants, while not directly disputing this allegation of the complaint, assert that they had authority from Montgomery's consent to enter the premises in the first instance.

The U.S. Supreme Court has held that "[w]hen an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *Chimel v. California*, 395 U.S. 752, 763 (1969).  Therefore, officers act lawfully in searching an arrestee's person and the immediate surroundings.  However, *Chimel* limits the scope of a search incident to arrest, stating "[t]here is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs–or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself.  Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant." *Id.* at 763.  Therefore, Defendant Officers would be in violation of the Fourth Amendment they searched Plaintiff's home after he had been arrested and placed in the police squad car, in the absence of a warrant or an exception such as consent. *Id.* However, in response to the motion for summary judgment, Plaintiff  advances only argument accompanied by no admissible evidence to suggest that such a search happened at all or that, if it did, it occurred in the absence of the valid consent above noted.

Once the moving party presents sufficient evidence to support its motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a

9

genuine issue for trial." Fed.R.Civ.P. 56(e). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The "nonmoving party is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 861 (6th Cir. 1986). The failure to present admissible probative evidence on these points is fatal to Plaintiff's claims of a Fourth Amendment violation. Defendants' motion will be granted.

### D. Qualified Immunity

The Individual defendants also assert, as an alternative basis for granting their motion, that qualified immunity bars Plaintiff's claim against them.  The U.S. Supreme Court has held that "government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818, (1982)).  In evaluating the Officers' claims of qualified immunity, the court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation."  *Wilson*, 526 U.S. at 609.

Plaintiff's complaint alleged a deprivation of a Fourth Amendment right; the Fourth

10

Amendment and the case law interpreting it has clearly established what constitutes unlawful search and seizure. *See Chimel*, 395 U.S. at 763. It would be clear to a reasonable officer that it would have been unlawful to search the entire home without a warrant or proper consent. *Id.* It would also be clear to a reasonable officer that some third parties, e.g., a cohabiting girlfriend, could give valid consent to enter. Indeed, when Montgomery said that the apartment was her's (Defs.' Mot. at Ex. 2, "Incident Report"), officers would perceive that Apt. #3 was not Plaintiff's and that Montgomery was in the best position to give consent. Even Plaintiff's complaint lists Montgomery's address as "41 Logan Apt. #3" (Pl.'s Compl. at 6 "List of Witnesses").

Even if the third party does not in fact possess "common authority over the premises," the search is still valid under the Fourth Amendment if the police officers reasonably believed that the third party had such authority. *Illinois v. Rodriguez,* 497 U.S. 177, 181, 186 (1990). The court, in evaluating officers' actions under this objective standard, asks: "[W]ould the facts available to the officer at the moment . . . warrant a man of reasonable caution [to believe] that the consenting party had authority over the premises?" *Id.* at 188, 110 S.Ct. 2793; *Harajli v. Huron Tp.* 365 F.3d 501, 506 (6th Cir. 2004). The answer here, based on the evidence presented, is yes, and Plaintiff's claim against the individual Officers is therefore barred by qualified immunity.

### E. Municipal liability

Defendants also assert that the City of Mt. Clemens (and its police department [1]) are

---

[1] A "police department" is not an entity that is capable of suing or being sued. The proper party would be the city of which the police department is a part. *See Smallwood v. Jefferson County Government,* 743 F.Supp. 502, 503 (W.D.Ky.1990); see also *Brown v.*

11

immune from liability.  A local government may not be sued under 42 U.S.C.  § 1983 when

the injury was caused solely by an employee and not caused by the custom of the local

government.  *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694

(1978).  As the Sixth Circuit noted, a city is not immune from liability for an injury under §

1983 unless the plaintiff alleges and demonstrates a "practice or custom on the part of the

City of Milan or its police department with respect to any of the individual officers' actions."

*Barnier v. Szentmiklosi*, 810 F. 2d 594, 599 (6th Cir. 1987).  In other words, Plaintiff must

establish that the city's official policies or customs (or lack thereof) were a "moving force"

behind the deprivation of Plaintiff's rights and arose as a result of "deliberate indifference"

to his rights.  *See Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996).

In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court held that:

> the inadequacy of police training may serve as the basis for § 1983 liability *only where the failure to train amounts to deliberate indifference* to the rights of person with whom the police come into contact . . . . Only where a failure to train reflects a *'deliberate' or 'conscious' choice by a municipality*--a 'policy' as defined by our prior cases--can a city be liable for such a failure under § 1983.

*Id.* at 388-89 (emphasis added).  The *City of Canton* Court further explained its conception

of "deliberate indifference" in the context of municipal liability by adding that:

> The issue in a case like this one . . . is whether [the] training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent city policy.  It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees.  But it may happen that in light of the duties assigned to specific officers or employees the need for more or

---

*Marshall County,* 394 F.2d 498 (6th Cir.1968); *Matthews v. Jones*  35 F.3d 1046, 1049 (6th Cir. 1994).

> different training *is so obvious, and the inadequacy so likely to result in the violation of constitutional rights*, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Id.* at 390 (emphasis added).  In sum, "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Bd. of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 410 (1997).

To establish liability under *City of Canton,* "the plaintiff must prove . . . (1) that the training program at issue is inadequate to the tasks that officers must perform; (2) that the inadequacy is the result of the city's deliberate indifference; and (3) that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury.'"  *Russo v. City of Cincinnati,* 953 F.2d 1036, 1046 (6th Cir. 1992) (quoting *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir. 1989)).  In addition, the focus of the court's inquiry is on the training program itself and testimony that shows individual officers did not have specific training, standing alone, is insufficient to defeat summary judgment.  *Carey v. Helton*, 70 Fed. Appx. 291, 2003 WL 21525115, at *3 (6th Cir. July 2, 2003) (officer testimony and conclusory proposed expert opinion insufficient to create issue of fact that training program showed deliberate indifference to potential excessive force against mentally ill detainees).  "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."  *City of Canton,* 489 U.S. at 390-91.   Moreover, it is not enough for a plaintiff to show that his injury could have been avoided if the officer had more or better training. *Mayo v. Macomb County*, 183 F.3d 554, 558 (6th Cir. 1999).

13

Plaintiff has not directed the court to admissible evidence that supports a finding that the City of Mt. Clemens Police Department has an official policy of unconstitutional activity or improper training or that its conduct rose to the level of deliberate indifference.  All of Plaintiff's arguments relate to the incident at issue in the instant case.  Evidence of an isolated incident of unconstitutional activity does not establish a municipality's deliberate indifference.  *Molton v. City of Cleveland*, 839 F.2d 240, 244-45 (6th Cir. 1988).

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendants' "Motion for Dismissal and/or in the Alternative Motion for Summary Judgment" [Dkt. # 24 ] is GRANTED.


   S/Robert H. Cleland                                         
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated:  August 3, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 3, 2005, by electronic and/or ordinary mail.


   S/Lisa G. Teets                                         
Case Manager and Deputy Clerk
(313) 234-5522


S:\Cleland\DEM\OpinionsandOrders\04-71833.VANHECK.Order.GrantingSJMotion.wpd